UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ROBERT BELL, JR.,         | )                              |
|---------------------------|--------------------------------|
| Plaintiff,                | )                              |
| vs.                       | ) Case No. 1:10-CV-00125-SNLJ  |
| MICHAEL HAKALA, et al.,   | )                              |
| Defendants.               | )                              |

## MEMORANDUM AND ORDER

Plaintiff Robert Bell, Jr. filed this 42 U.S.C. § 1983 claim against defendants Joyce Dickerson, Jeff Norman, Dr. Michael Hakala, and Dr. Russell Graham[1], all of whom are or were employed at the Southeast Correctional Center ("SECC") in Charleston, Missouri, where plaintiff is currently incarcerated. Plaintiff filed a motion for summary judgment on December 27, 2010 (#34). Defendant Dr. Hakala filed a motion for summary judgment on January 18, 2011 (#40). Defendants Norman and Dickerson filed a motion for summary judgment on March 24, 2011 (#70). Responsive pleadings have been filed, and all three matters are ripe for disposition.

**I. Case Summary**

Plaintiff claims that the defendants failed to provide treatment for his chronically dry skin, causing cracks and bleeding sores on his right hand and feet. Also, plaintiff alleges that the defendants failed to provide treatment for his shoulder bursitis, bad back[2], and arthritic right

---

[1] Defendant Graham was not served with process until May 27, 2011. He filed a motion for extension of time to file an answer on June 17, 2011.

[2] Plaintiff raises claims regarding his back and shoulder problems for the first time on summary judgment. Because those claims were not raised in his complaint, they cannot now be addressed on summary judgment.

1

ankle. Plaintiff maintains that the defendants' actions and inactions violate his Eighth Amendment right to be free from cruel and unusual punishment. The following facts are not disputed, except where indicated.

### A. Plaintiff's Skin Condition

Plaintiff has suffered from chronically dry skin on his hands and scalp since at least early 2008. At times, plaintiff has cited an allergy to the prison's wool blankets as a cause of his skin troubles. Plaintiff has filed medical services requests ("MSRs") for non-wool blankets, skin lotion, and/or petroleum jelly on multiple occasions in 2008, 2009, and 2010. However, on January 20, 2009, Dr. Hakala ordered that plaintiff be given a non-wool blanket. Plaintiff alleges that his remaining skin complaints, mostly in regard to his right hand, persist due to lack of treatment with lotion or petroleum jelly. Defendant Dickerson admits she has denied plaintiff's requests for lotions pursuant to Missouri Department of Corrections ("MDOC") policy.

On December 25, 2009, another nurse saw plaintiff in regard to his right hand complaints. Plaintiff stated that he had had dry patches on his right hand fingers since he had been a mechanic on the streets years ago, and that sometimes his nerves drove him to peel the dry skin off. The nurse noted that three fingers on plaintiff's right hand were open and had been bleeding slightly in areas where plaintiff admitted to scratching off dry skin. She cleaned and applied Bacitracin ointment to plaintiff's wounds, and applied an adhesive dressing.

Plaintiff filed an MSR on March 30, 2010 complaining that his "fingers are bleeding, draining due to infection, swollen, and I am in constant pain also from dry skin (need lotion)." Plaintiff filed a second MSR in regard to his skin condition on June 6, 2010. On June 16, plaintiff proceeded to file an informal resolution request ("IRR") stating in part that he suffered

from "extremely dry skin to the point that my right hand fingers crack, bleed, and hurt (medical won't help)." Finally, on June 27 plaintiff met with a nurse in regard to his right hand skin condition. The nurse noted that while several areas of skin on plaintiff's fingers and palm appeared scabbed and in various degrees of healing, there were no open areas or cracks at that time.

On July 20, 2010, plaintiff was again seen by the nursing staff. While the examining nurse observed areas of cracking on the skin of plaintiff's right hand, she noted no signs of infection. Plaintiff stated that he was unable to purchase vaseline or lotion from the canteen, and requested help from the medical department. Two days later, plaintiff filed another IRR requesting moisturizer for the skin on his hand and scalp. Plaintiff filed yet another IRR on August 2, demanding to see a doctor in regard to his dry skin and open sores.

Plaintiff saw Dr. Russell Graham on August 4, 2010 after not showing up for an earlier appointment scheduled for July 23. Plaintiff declared that he could buy nothing from the canteen or else his monetary support from MDOC for his legal work would be withheld. Dr. Graham noted that the skin on the ulnar side of all four fingers on plaintiff's right hand was thickened with some fissuring. He prescribed triamcinolone topical cream. On August 25, one day after he filed a grievance against Dr. Hakala for failing to address his skin condition, plaintiff told a nurse that the skin condition on his hands was getting better. Plaintiff filed another grievance on September 2, alleging that while the topical cream had helped to heal his right hand, the rest of his body and his scalp had not been addressed.

When Dr. Graham met again with plaintiff on September 7, 2010, he agreed that the skin rash on his right hand had been resolved. Acting Warden Omer J. Clark, who preceded defendant

Norman, responded to plaintiff's September 2 grievance on October 16, 2010. Clark stated that petroleum jelly and skin care lotion were in fact on the most recent canteen list. However, plaintiff was once again compelled to file an IRR, on November 9, because he had been barred by defendant Dickerson from purchasing lotions or moisturizers on grounds that the prison does not consider such items to be hygienic. In response, Ruth Taylor, RN (SECC Director of Nursing) examined plaintiff, finding that he no longer suffered from sores on his hands or scalp.

### B. Plaintiff's Ankle Condition

Plaintiff also alleges that the defendants failed to provide treatment for his arthritic right ankle. Since 2000, plaintiff suffered from shoulder and back injuries stemming from a car accident. Plaintiff regularly sought medical attention for these maladies while in prison, but made no mention of any issues with his ankle until he filed a June 6, 2010 MSR, citing shoulder bursitis and also a possible right foot fracture. When meeting with a nurse on June 27, plaintiff stated that his chronic back pain had not been resolved and that the pain was now radiating to his right shoulder, leg, and foot. Each of these complaints was previously reflected in a June 16, 2010 IRR. The nurse noted that plaintiff walked with a slow gait and slight limp. Plaintiff explained that his current prescription of Naproxen was not enough; as he received only 30 tablets monthly, he tended to run out halfway through the month (he took a pill twice a day as per Dr. Hakala's April 13 order).

On July 20, 2010, plaintiff filed an MSR with respect to right ankle pain and worsening back pain. Alhough plaintiff did not show up for his July 23 appointment with Dr. Graham, he met with him on August 4 in regard to both his skin and ankle complaints. Dr. Graham noted that while plaintiff's right foot displayed no swelling or discoloration, he described feeling an intense

4

burning in his ankle when asked to stand on his toes or roll back on his heels. Dr. Graham also observed that plaintiff would tend to walk on the lateral edge of his foot, with a significant limp. He facilitated plaintiff with an order for no prolonged standing due to the arthritis in his ankle.

Plaintiff filed an IRR in regard to both his skin and ankle conditions on August 2, 2010, complaining that "my ankle feels like it is fractured or a nerve on the instep is pinched. All I know is I can barely support my weight on the right foot." In response, Ruth Taylor, RN (SECC Director of Nursing) noted that an X-ray of plaintiff's right foot and ankle was negative. However, on August 24, plaintiff filed a grievance against Dr. Hakala for his refusal to address plaintiff's chronically dry skin or his ailing ankle. In the face of an unfavorable outcome to that grievance, plaintiff filed an appeal on September 24, stating that although Dr. Graham later addressed both plaintiff's skin and ankle conditions, Dr. Hakala never had.

On November 23, 2010, plaintiff was prescribed emollient lotion to be applied to a scar on his left ankle and additional triamcinolone topical cream for his hand. Finally, on January 5, 2011, plaintiff met with a nurse in regard to his gait and fingers. The nurse noted that plaintiff had no evident gait problem or difficulty sitting or rising, and was generally uncooperative.

**II. Legal Standard**

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really

do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

The parties have filed a total of three summary judgment motions against each other. Essentially, plaintiff argues that he is entitled to summary judgment because undisputed material facts establish the defendants were negligent and completely indifferent to plaintiff's chronically

dry skin, bad back, shoulder bursitis, and ankle arthritis. Defendants Dickerson, Norman, and Dr. Hakala contend that plaintiff has failed to present *any* disputed material issues of fact so as to demonstrate that any of the three were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Additionally, defendants Norman and Dickerson argue that they are entitled to qualified immunity and that they are protected by the Eleventh Amendment from plaintiff's official capacity claims. Finally, defendant Dickerson claims that she cannot be held liable because she was not mentioned in plaintiff's supplemental complaint.

To establish a constitutional violation based on inadequate medical care, the plaintiff must show that the defendants were deliberately indifferent to a serious medical need. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)); *see also Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.").

In order to satisfy the subjective component of his medical claim, the plaintiff inmate must show that the defendants knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable if he knows that an inmate

7

faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Moreover, to create an actionable constitutional violation for delay in treatment, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). Delay must be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### A. Defendant Dickerson

Plaintiff declares that defendant Dickerson was completely indifferent to his chronic dry skin which had cracked and developed into open sores. Plaintiff notes that "even a layperson could see that [plaintiff's] dry skin condition was causing the sores, and that [Dickerson's] failure to consider that, further overlooking the problem, would just lead to further injury." Defendant Dickerson admits that she denied plaintiff's requests, made between mid-April and August 1, 2010, to allow him to purchase vaseline and hand lotion. However, she maintains that her decisions properly reflect MDOC policy.[3] Plaintiff has argued both that he was indigent, thus

---

[3]MDOC policy states that inmates should be supplied basic hygiene items free of charge if the inmate does not have sufficient funds. MDOC SOP 8-6.1. "Basic hygiene items" include soap, toothpaste, toothbrushes, razors, sanitary napkins, and toilet paper, but lotion and petroleum jelly are not mentioned. *See id.*

8

qualifying to have lotion provided to him for free, and that he had money and could have purchased it himself if allowed.

The Court evaluates whether plaintiff can demonstrate that defendant Dickerson was deliberately indifferent to a serious medical need. *See Grayson*, 454 F.3d at 808-09. Even had defendant Dickerson identified plaintiff's condition as a serious medical need, her proper course of action would have been to send him for medical attention. *See Camberos*, 73 F.3d at 176 (a serious medical need is one that is so obvious that a layperson would recognize the necessity for *a doctor's attention*). The Eighth Amendment cannot support plaintiff's claim because his medical needs, whether serious or not, *were* reported to Drs. Hakala and Graham. While defendant Dickerson *may* have been wrong in denying plaintiff the opportunity to purchase lotion, her actions did not violate plaintiff's constitutional rights.

### B. Defendant Norman

For the same reasons, defendant Norman did not violate plaintiff's Eighth Amendment rights. Defendants Dickerson and Norman had no greater duty to plaintiff under the Eighth Amendment until plaintiff's doctors actually prescribed plaintiff cream and lotion, which Dr. Graham did on August 4, 2010 and November 23, 2010, respectively.

### C. Defendant Dr. Hakala

Plaintiff alleges that Dr. Hakala's longtime refusal to treat his dry skin condition with anything more than band-aids and antibiotic ointment violates his Eighth Amendment rights. In addition, plaintiff argues that Dr. Hakala's failure to provide plaintiff with a lay-in order limiting prolonged standing (due to developing ankle arthritis) is likewise a constitutional violation. Plaintiff states that Dr. Hakala has displayed deliberate indifference to his serious medical needs

because plaintiff had filed many MSRs, IRRs, and grievances requesting lotions, moisturizers, and revised restrictions, and Dr. Hakala did not agree to all these requests in a timely manner.

The mere negligence, or medical malpractice, of a prison doctor is insufficient to give rise to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Estelle v. Gamble*, 492 U.S. 97, 106). When prison staff does not implement a prisoner's requested course of treatment, no question of deliberate indifference is created. *Id*. at 1241 ("[prisoner's] own disagreement with the frequency of monitoring her blood levels does not create a question of deliberate indifference as it does not indicate an 'unnecessary and wanton infliction of pain' or treatment that is 'repugnant to the conscience of mankind'"); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). Medical care so inappropriate as to evince intentional maltreatment or a refusal to provide essential care violates the Eighth Amendment, but a mere disagreement with the course of medical treatment does not constitute a claim of deliberate indifference. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991) (citations omitted).

In this case, the actions and inactions of Dr. Hakala are insufficient to support a deliberate indifference claim. Plaintiff has not established that his ankle and skin conditions were "serious medical needs," only that he disagrees with how Dr. Hakala handled them. *See Dulany*, 132 F.3d at 1241; *see also Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). Alhough Dr. Hakala did not see plaintiff as soon or as often as plaintiff wished, plaintiff has not brought forth probative evidence to suggest that any delay was prompted by "obduracy and wantonness, not inadvertence or error in good faith." *See Whitley*, 475 U.S. at 319. On the contrary, Dr. Graham responded to plaintiff's ankle complaints by sending him for an X-ray, which came back negative for fracture or swelling, and treated him accordingly. Even if plaintiff could show that Dr.

Hakala's alternate course of treatment constituted malpractice, no constitutional violation exists. *See Dulany*, 132 F.3d 1239; *see also Estelle*, 429 U.S. at 107. Finally, the affidavits establishing other inmates' opinions about plaintiff's medical treatment are insufficient to raise a genuine fact issue. *See Assam Drug Co. v. Miller Brewing Co.*, 798 F.2d 311, 319 (8th Cir. 1986).

## IV. Conclusion

Plaintiff has failed to present any material issues of disputed fact so as to demonstrate that defendants Dickerson, Norman, and Dr. Hakala were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Therefore, summary judgment will be granted to defendants Dickerson, Norman, and Dr. Hakala.

Accordingly,

**IT IS THEREFORE ORDERED** that defendant Dr. Michael Hakala's motion for summary judgment (#40) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants Joyce Dickerson and Jeff Norman's motion for summary judgment (#70) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Robert Bell, Jr.'s motion for summary judgment (#34) is **DENIED**.

**IT IS FINALLY ORDERED** that judgment is hereby entered for the defendants.

Dated this 8th day of July, 2010.

_____
UNITED STATES DISTRICT JUDGE