# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT BELL, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:10-CV-00125-SNLJ** |
| | ) | |
| **MICHAEL HAKALA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Robert Bell, Jr. filed this 42 U.S.C. § 1983 claim against defendants Joyce Dickerson, Jeff Norman, Dr. Michael Hakala, and Dr. Russell Graham, all of whom are or were employed at the Southeast Correctional Center ("SECC") in Charleston, Missouri, where plaintiff was previously incarcerated.

On July 8, 2011, this Court entered summary judgment for defendants Joyce Dickerson, Jeff Norman, and Dr. Michael Hakala (#92). Defendant Dr. Russell Graham, who was not served until May 27, 2011, filed a Motion for Summary Judgment on July 22, 2011 (#95). Plaintiff responded on August 4 and August 23, 2011 (#101,[1] #103). These matters are now ripe for disposition.

---

[1] Plaintiff's document number 101 is titled "Plaintiff's Motion to Withdraw his Motion for Summary Judgment and Suggestions in Opposition to Summary Judgment of Defendants and Uncontroverted Facts." Because plaintiff's motion for summary judgment has already been denied, it cannot now be withdrawn.

## I. Case Summary

Plaintiff claims that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide treatment for his chronically dry skin, which caused cracks and bleeding sores on his right hand and feet. Also, plaintiff alleges that the defendants failed to provide treatment for his painful right ankle.  The Court has limited the undisputed facts recited here to those involving defendant Graham.  For a more detailed review of the facts, see the Court's Memorandum and Order dated July 8, 2011 (#92).

### A.  Plaintiff's Skin Condition

Plaintiff has suffered from chronically dry skin on his hands and scalp since at least early 2008.  Plaintiff filed medical services requests ("MSRs") for non-wool blankets, skin lotion, and/or petroleum jelly on multiple occasions in 2008, 2009, and 2010.

Plaintiff saw Dr. Russell Graham on August 4, 2010 after not showing up for an earlier appointment scheduled for July 23.  Dr. Graham noted that the skin on the ulnar side of all four fingers on plaintiff's right hand was thickened with some fissuring. He prescribed triamcinolone topical cream. On September 7, Dr. Graham met again with plaintiff, and plaintiff's medical records indicate that the rash on plaintiff's hands was getting better with steroid cream.

### B.  Plaintiff's Ankle Condition

Plaintiff also alleges that the defendants, including defendant Graham, failed to provide treatment for plaintiff's arthritic or otherwise injured right ankle. Since 2000, plaintiff suffered from shoulder and back injuries stemming from a car accident. Plaintiff regularly sought medical attention for these maladies while in prison, but made no mention of any issues with his ankle until he filed a June 6, 2010 MSR, complaining of shoulder bursitis and also a possible right foot

2

fracture. When meeting with a nurse on June 27, plaintiff stated that his chronic back pain had not been resolved and that the pain was now radiating to his right shoulder, leg, and foot. Each of these complaints was previously reflected in a June 16, 2010 IRR.

On July 20, 2010, plaintiff filed an MSR with respect to right ankle pain and worsening back pain. Although plaintiff did not show up for his July 23 appointment with Dr. Graham, plaintiff met with defendant Graham on August 4 in regard to both his skin and ankle complaints. Dr. Graham noted that while plaintiff's right foot displayed no swelling or discoloration, he described feeling an intense burning in his ankle when asked to stand on his toes or roll back on his heels. Dr. Graham also observed that plaintiff would tend to walk on the lateral edge of his foot, with a significant limp. He ordered that plaintiff not participate in any prolonged standing due to the arthritis in his ankle.

Plaintiff filed an IRR in regard to both his skin and ankle conditions on August 2, 2010, complaining that "my ankle feels like it is fractured or a nerve on the instep is pinched. All I know is I can barely support my weight on the right foot." In response, Ruth Taylor, RN (SECC Director of Nursing) noted that an X-ray of plaintiff's right foot and ankle was negative. In a grievance appeal dated September 24, plaintiff noted that Dr. Graham had addressed both plaintiff's skin and ankle conditions.

## II.  Legal Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing

factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

Defendant Graham seeks summary judgment on plaintiff's Eighth Amendment claims against him. To establish a constitutional violation based on inadequate medical care, the

plaintiff must show that the defendants were deliberately indifferent to a serious medical need. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)); *see also Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.").

In order to satisfy the subjective component of his medical claim, the plaintiff inmate must show that the defendants knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable if he knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Moreover, to create an actionable constitutional violation for delay in treatment, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the

5

inmate." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). Delay must be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff's claims against Dr. Graham are somewhat perplexing because, regardless of whether plaintiff can establish a serious medical need, he admits that, after meeting with Dr. Graham in 2010, he was "finally and adequately treated for his injuries." (#98 at 7).[2]  Indeed, to the extent plaintiff has anything bad to say about Dr. Graham, his complaints amount to mere disagreements with his treatment and do not rise to the level of deliberate indifference.  A mere disagreement with the course of medical treatment does not constitute a claim of deliberate indifference.  *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991). Furthermore, to the extent that plaintiff claims that he was injured by some delay in treatment (*see* #103 at ¶ 1), plaintiff does not contend that Dr. Graham was the reason for the delay.  As a result of plaintiff's admissions and allegations in general, there can be no genuine issue of disputed fact regarding Dr. Graham's treatment of plaintiff.

**IV.  Conclusion**

Plaintiff has failed to present any material issues of disputed fact so as to demonstrate that defendant Graham was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Therefore, summary judgment will be granted to defendant Graham.

Accordingly,

---

[2]Plaintiff also asserts in his "Response to Defendant Dr. Russell Graham M.D.'s Statements of Uncontroverted Material Facts" (#103) that plaintiff "actually considers Dr. Russell Graham as his witness to these events and injuries.  And plaintiff respectfully requests this Court grant his Motion for the court to Amend its judgment" for the defendants.

**IT IS HEREBY ORDERED** that defendant Dr. Russell Graham's motion for summary judgment (#95) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's "Plaintiff's Motion to Withdraw his Motion for Summary Judgment and Suggestions in Opposition to Summary Judgment of Defendants and Uncontroverted Facts" (#101) is **DENIED as moot**.

Dated this 16th day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE